# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| (1) GWEN B. WITHERSPOON, individually and as trustee of the Gwen B. Witherspoon Revocable Living Trust dated August 10, 1998, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. CIV-22-613-G |
| (1) CHRISTOPHER D. INCE, (2) RACHAEL S. INCE, (3) HOWARD P. PAYNE, and (4) SUE A. PAYNE; and (5) The BOARD OF COUNTY COMMISSIONERS of GARVIN COUNTY, OKLAHOMA; (6) LORI FULKS, Clerk of Garvin County, Oklahoma, and (7) THE HONORABLE JOHN O'CONNOR, Attorney General of the State of Oklahoma, in their official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| _____ | _) | |

## COMPLAINT

1. Gwen B. Witherspon brings this action pursuant to 42 U.S.C. § 1983 to protect and vindicate her rights to property, due process, and equal protection. This action challenges three Oklahoma statutes that in their application violate the Takings clause of the Fifth Amendment and the due process and equal protection clauses of the Fourteenth

1

Amendment.  The Plaintiff seeks a speedy hearing under Rule 57 for a declaration about the authorization for roads in 34 Stat. 137 (Five Tribes Allotment Act).  The Plaintiff also seeks other declaratory and injunctive relief for ongoing deprivations of civil rights.

## I.    NATURE OF THE ACTION

2.  Four Defendants exercise eminent domain as private persons to take a road easement for their use on the Plaintiff's property.  They also assert an absolute right to use the Plaintiff's farmland along a section line without compensation, exercise of eminent domain, or evidence of an easement impressed on it.

3.  Gwen Witherspoon owns property in Section 9, Township 4 North, Range 3 West, in Garvin County, Oklahoma (the Witherspoon parcel).  Statement of Gwen Witherspoon (Statement), filed with this Complaint and marked Exhibit (Ex.) 1, ¶ 6.

4.  Defendants Howard Payne and Sue Payne owned land that adjoins the Witherspoon parcel.  Defendants Christopher Ince and Rachael Ince were the Paynes' tenants.  In 2021, the Paynes conveyed their land to the Inces (the Payne/Ince parcel).

5.  The Witherspoon and the Payne/Ince parcels lie in a bend of the Washita River.

6.  The Paynes and Inces first demanded access across the Witherspoon parcel after failure of Howard Payne's riverbank project in 2007 destroyed their access to a public road. See Statement, Ex. 1, ¶ 13.

7.  In 2008, the Paynes and Inces sued Gwen Witherspoon in state court (2008 proceeding).  They maintain a private condemnation proceeding in that case now to put a

road on the west side of the Witherspoon parcel.  They also seek to take access on the south section line of the Witherspoon parcel that crosses through a field on the Plaintiff's family's farm. See Statement, Ex. 1, ¶¶ 10, 18.

8.  The Inces seek to take access on the same south section line for themselves through another case (2021 proceeding).

9.  Rights in private property are protected by the Fifth Amendment: "nor shall private property be taken for public use, without just compensation."

10.  With participation from government officials, the Paynes and Inces use three Oklahoma statutes to take Gwen Witherspoon's land for their private benefit.

11.  There is no doubt that the Constitution prohibits states from taking private "land for the purpose of conferring a private benefit on a particular private party." *Kelo v. City of New London, Conn.*, 545 U.S. 469, 477 (2005).

12.  An Oklahoma statute provides: "Any private person . . . shall have power to exercise the right of eminent domain . . . for private ways of necessity . . .."  Okla. Stat. tit. 27, § 6.

13.  The Paynes and Inces invoke Section 6 to take a twenty-foot road easement on the west side of the Witherspoon parcel by eminent domain for their private use.

14.  Section 53 of Title 66 requires an inspection of another's private property when applied pursuant to Okla. Stat. tit. 27, § 6.  Section 53 requires the court clerk to file the reported results, and it authorizes the county clerk to file the report with the force and

effect of a deed.  The Paynes and Inces procured such a search of the Witherspoon parcel and the filing of the report of its results with the court clerk.

15.  Section 1201 of Title 69 as applied allows fee landowners to take access on section lines across private property by court declaration without exercise of eminent domain or compensation.  Other statutory provisions authorize boards of county commissioners to declare, establish, open, and construct roads.  Section 1201 recognizes their authority over section lines.

16.  The Paynes and Inces invoke Section 1201 of Title 69, treaties, and Oklahoma decisional law to take access and make a road for their own use along the south section line of the Witherspoon parcel.

17.  In applying Okla. Stat. tit. 27, § 6, Okla. Stat. tit. 66, § 53, and Okla. Stat. tit. 69, § 1201, the Paynes and Inces benefit from official actions of state judges, the court clerk, and the Garvin County Clerk to appropriate the Plaintiff's farmland.

## II.   PARTIES

18.  Plaintiff Gwen B. Witherspoon resides in Cleveland County in this district. She is the trustee and current beneficiary of the Gwen B. Witherspoon Revocable Living Trust dated August 10, 1998.

19.  Defendants Christopher Ince and Rachael Ince (the Inces) reside in this district.  Defendants Howard Payne and Sue Payne (the Paynes) reside in Coal County, Oklahoma.

4

20.  Defendant Board of County Commissioners of Garvin County, Oklahoma (Board), is a governmental entity with its principal place of business in this district in Garvin County.

21.  Defendant Lori Fulks is the Garvin County Clerk and performs the functions of register of deeds and clerk of the Board in this district.

22.  Defendant John O'Connor is Attorney General of the State of Oklahoma and defends the state, its relators, and the constitutionality of its laws.  The office of the Attorney General prepared and published the Oklahoma Landowner's Bill of Rights. Okla. Stat. tit. 27, § 18.

### III.    JURISDICTION AND VENUE

23.  This action is brought by Gwen B. Witherspoon pursuant to 42 U.S.C. § 1983 for redress of the deprivation of rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments to the Constitution of the United States, to which the Defendants, as state actors and acting in concert or joint participation with state officials, have subjected her, and caused or may imminently cause her to be subjected, under color of statutes, customs, usages, and law of the State of Oklahoma.

24.  This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343 to protect and enforce rights of Gwen Witherspoon and to prevent and vindicate violations of those rights by the Defendants.  This Court has original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

25.  Venue is proper in this Court under 28 U.S.C. § 1391.  The Defendants reside or are located in the State of Oklahoma.  Property that is a subject of this action is situated in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.  Gwen Witherspoon, Christopher Ince, and Rachael Ince reside in this district.  The Board of County Commissioners of Garvin County, Oklahoma is a body corporate with its principal place of business in this district.  Howard Payne and Sue Payne reside in Oklahoma and have taken and seek to take Gwen Witherspoon's property in this district under color of state law.

26.  Gwen Witherspoon's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

27.  Gwen Witherspoon's entitlement to nominal damages for violations of legal rights is recognized by *Uzuegbunam v. Preczewski*, 592 U.S. ____, slip op. No. 19-968, March 8, 2021.

28.  Gwen Witherspoon's claim for an award of her costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable state and federal law.

6

## IV.   FACT ALLEGATIONS

**A.   The Plaintiff's property.**

29.   Through the Gwen B. Witherspoon Revocable Living Trust dated August 10, 1998, Gwen Witherspoon owns property described as the Southwest Quarter of the Southeast Quarter (SW/4 SE/4) and the South Half of the Southeast Quarter of the Southeast Quarter (S/2 SE/4 SE/4) all in Section 9, Township 4 North, Range 3 West, of Garvin County, Oklahoma (the Witherspoon parcel).  Statement, Ex. 1, ¶ 6.

30.  Samuel E. Neill, a citizen of the Choctaw Nation by intermarriage, selected the $SW^4$ of $SE^4$ of Section 9 and the $S^2$ of the $SE^4$ of the $SE^4$ of Section 9, T4N, R3W of the lands of the Choctaws and Chickasaws as part of his allotment exclusive of a homestead on September 19, 1903 and filed his selection of it in the land office at Tishomingo, Indian Territory.  The certificate of allotment for it was issued and delivered (the Neill Section 9 parcel).  Neill Allotment Records, copies of three pages of which are filed with this Complaint and marked Exhibit 2.

31.  Samuel E. Neill and his spouse Frankie M. Neill conveyed the Neill Section 9 parcel without encumbrances and with covenant of seisin to Robert R. Carmack by warranty deed dated April 19, 1905, which was filed for record at Pauls Valley on April 25, 1905, and is found in the property records of Garvin County in Misc. Book 7 at page 577 (". . . I am lawfully seized in fee simple of the aforegranted premises . . . free from all incumbrances . . ..").

32.  Samuel E. Neill's allotment certificate was filed for record at Pauls Valley on February 6, 1906, and recorded March 13, 1906.  Neill Allotment Certificate, a copy of which is filed with this Complaint and marked Exhibit 3.

33.  Samuel E. Neill's allotment patent was filed and recorded at Muskogee on November 5, 1906, and in Garvin County on November 13, 1917.  Neill Allotment Patent, a copy of which is filed with this Complaint and marked Exhibit 4.

34.  Robert R. Carmack conveyed the Neill Section 9 parcel without encumbrances except a mortgage and with covenant of seisin  to Maggie Carmack by warranty deed dated September 1, 1906, filed at Pauls Valley for record September 5, 1906, and recorded September 19, 1906, which is now filed in the property records of Garvin County in Misc. Book 16 at page 110.

35.  Maggie Carmack conveyed the Neill Section 9 parcel to J. M. Brown by warranty deed dated October 4, 1940, which was filed in Garvin County on October 14, 1940 and recorded.  J. M. Brown Deed, a copy of which is filed with this Complaint and marked Exhibit 5; Statement, Ex. 1, ¶ 7.

36.  At the death of J. M. Brown, the Neill Section 9 parcel passed to his surviving spouse, Thelma Brown, and three daughters, including Gwen Brown, now Gwen Witherspoon.  Gwen Witherspoon now owns it in her trust.  Statement, Ex. 1, ¶ 9.

37.  The section line on the south side of the Witherspoon parcel crosses cultivated and pasture land that covers the east half of Sections 9 and 16 lying south and east of the

Payne/Ince parcel and the Washita River.[1]  Land along that section line has been farmed, managed, and operated as part of a single agricultural field of Gwen Witherspoon's family's farm since the 1940s.  State Highway 19 runs generally east and west through part of Section 16 owned by J. I. Brown, LLC. Statement, Ex. 1, ¶¶ 3, 10, 11.

38.  Gwen Witherspoon was born in a farmhouse on Section 16.  J. I. Brown was her grandfather.  Statement, Ex. 1,¶¶ 1, 2.

39.  No road or way of access exists in fact or has been alleged ever to have existed in fact along the section line on the south side of the Witherspoon parcel. Statement, Ex. 1, ¶ 4.  No evidence exists of a specific road easement or right-of-way on the section line segment between the east half of Section 9 and the east half of Section 16. Nor is there an allegation of such a specific easement.  Statement, Ex. 1, ¶ 5.

40.  Gwen Witherspoon manages the family farm.  Toby Wilmot farms it under a crop-share lease.  Statement, Ex. 1, ¶¶ 11, 18.

41.  Oklahoma law creates property rights protected by the Constitution.

42.  The right to exclude is one of the most treasured rights of property ownership. Section 1 of Title 60 of the Oklahoma Statutes provides:

> The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Chapter the thing of which there may be ownership is called property.

---

[1] An image that depicts these descriptions may be found at *https://www.acrevalue.com/plat-map/OK/Garvin/?lat=34.828316&lng=-97.516451&zoom=15* (last visited 07/11/2022).

43. Under Oklahoma law,

> The term property as used in our Constitution regarding the taking of
> private property for public use for which just compensation must be paid
> includes not only real estate held in fee, but also easements, personal
> property and every valuable interest which can be enjoyed and recognized
> as property.
>
> *Curtis v. WFEC R.R. Co.*, 2000 OK 26, ¶13, 1 P.3d 996.

44. The Plaintiff's property includes legal and equitable title and other valuable

interests Oklahoma law recognizes as property that are enumerated in Section 49 of Title

60 of the Oklahoma Statutes.  See Statement, Ex. 1, ¶¶ 10, 14, 15, 17, 18, 19, 20, 22.

45. Section 23 of Article 2 of the Oklahoma Constitution provides:

> No private property shall be taken or damaged for private use, with or
> without compensation, unless by consent of the owner, except for private
> ways of necessity, or for drains and ditches across lands of others for
> agricultural, mining, or sanitary purposes, in such manner as may be
> prescribed by law.

**B.  The Defendants' property.**

46. Howard Payne and Sue Payne are the grantors and Christopher Ince and

Rachael Ince are grantees of a joint tenancy warranty deed dated November 30, 2021,

filed December 8, 2021, of property in Garvin County, Oklahoma described as

> the Southeast Quarter of the Northeast Quarter of the Southwest Quarter
> (SE/4 NE/4 SW/4) and the East Half of the Southeast Quarter of the
> Southwest Quarter (E/2 SE/4 SW/4) and the Southwest Quarter of the
> Northwest Quarter of the Southeast Quarter (SW/4 NW/4 SE/4) LESS AND
> EXCEPT all that part of the SE/4 SE/4 SW/4 lying West of the center of the
> channel of the Washita River, being approximately 5.5 acres, all in Section
> Nine (9), Township Four (4) North, Range Three (3) West, surface only
>     (the Payne/Ince parcel).

47.   The south quarter-corner at the southeast corner of the SE/4 SE/4 SW/4 on the south section line of Section 9 lies in the Washita River channel.

48.   Part of the Payne/Ince parcel lies in the west half of Section 9.  The Washita River flows toward the north over the quarter-corner of the south section line of Section 9, north over and along the west side of the Witherspoon parcel, then north along the west side of the Payne/Ince parcel, then east into the east half of Section 9 north of the Payne/Ince parcel, where it bends southeast and continues to flow southeast along the north side of the Witherspoon parcel until it passes over the southeast corner of Section 9 and into Section 15 to the east.  See footnote 1, *supra*.

49.   The Witherspoon and Payne/Ince parcels share no unity of title.

C.     **Circumstances from which the Paynes' and Inces' demands to take Gwen Witherspoon's property arise.**

50.   Around 1960, Gwen Witherspoon's family members who owned land in Section 16 had given permission to the owners of the Payne/Ince parcel to cross over part of the west line of the east half of Section 16.  Statement, Ex. 1, ¶ 12.  Land along the line between the west half and the east half of Sections 9 and 16 was altered by Howard Payne between 2003 and 2004 when he constructed a 3,000-linear-foot tire mattress on the bank of the Washita River.  His project re-formed the bank from drop-off to slope and constructed a blanket of tires on it up and down stream and through the bend of the river, where several roads had been cut away.  The project placed 120 25-foot sections of old automobile and truck tires along the east bank, weaved with cable and anchored to tractor

tire deadmen placed upland 50 feet from top of bank and buried 15 feet deep. Howard

Payne's construction altered the land of the Plaintiff's family farm and relocated the top

of the river bank to the east. His project was completed in 2004.

51. In 2007, 1200 to 1500 feet of original blanket failed and washed midstream

and down river. When it failed, the Plaintiff's family farm land along and on the top of

the east river bank that Howard Payne had reshaped and where he had suspended and

anchored his old tires, went into the Washita River.

52. After Howard Payne failed to maintain his project in good condition, failed to

remove displaced tires and cables from the Washita River, and failed to restore the river

bank, the Paynes and Inces demanded road access along the west side of the Witherspoon

family farm through Sections 9 and 16. Gwen Witherspoon gave temporary permission,

but they were unable to agree on a permanent arrangement. Statement, Ex. 1, ¶ 13.

**D.     Acts of the Defendants to take the Plaintiff's property for their use.**

53. After 2007, the Paynes and Inces, and others by their invitation, have

continued to cross over the posted Witherspoon parcel without permission, damaging the

Plaintiff's land and crops. Statement, Ex. 1, ¶¶ 17-20.

54. The Paynes and Inces sued Gwen Witherspoon for damages and a road

easement by declaration in Garvin County District Court in 2008. Howard Payne, et al.,

v. Gwen Witherspoon, et al., No. CJ-2008-00430 (the 2008 proceeding). Gwen

Witherspoon counterclaimed.

D.1.  ***Road Easement***

55.  The Paynes and Inces amended their petitions in the 2008 proceeding to take a

road easement by private exercise of eminent domain pursuant to Section 6 of Title 27 of

the Oklahoma statutes, which provides:

> Any private person, firm or corporation shall have power to exercise the
> right of eminent domain in like manner as railroad companies for private
> ways of necessity or for agriculture, mining and sanitary purposes.

The manner of condemnation by railroad companies is described in Okla. Stat. tit. 66 §§

53 *et seq*.  Gwen Witherspoon's counterclaim in the 2008 proceeding is stayed until the

private condemnation proceeding is concluded.

56.  Under Okla. Stat. tit. 66, § 53, a district judge selects three freeholders

(commissioners) to inspect the real property subject to condemnation and report about it

in writing.  The court clerk files and records their report.  Section 53 authorizes the

county clerk to file and record a copy of their report without further proof, in the manner

and with like force and effect as is provided for the recording of deeds.  Section 53

authorizes the condemning entity to construct a road as soon as it pays the reported value.

57.  Statutes that control condemnation in the manner of railroad companies do not

entitle landowners to a hearing at which the right or power to exercise eminent domain

must be proved, or at which a landowner can be heard to challenge that authority.

58.  The Oklahoma Supreme Court created a hearing in which rights to condemn

and maintain a condemnation proceeding in the manner of railroad companies may be

adjudicated.  Such a hearing is not required even for takings conducted by any private person pursuant to Okla. Stat. tit. 27, § 6.  It only occurs if and after exceptions are filed to a commissioners' report.

59.  In 2020, the Paynes and Inces caused commissioners in condemnation to inspect the Witherspoon parcel, assess damages for their private appropriation of her land, and file their report. The commissioners reported on June 18, 2020 and assessed damages of $5,000 for the appropriation.  The court clerk filed their report and issued a receipt on June 18, 2020 for the Paynes and Inces for $5,000.00.

60.  Section 55 of Title 66 requires court clerks to forward a copy of the commissioners' report to the landowner with an approved condemnation notice providing an opportunity to contest the condemnors' right to take the property.

61.  The notice filed on June 18, 2020 affords Gwen Witherspoon no opportunity to contest the Paynes' and Inces' right to take her property.

62.  Gwen Witherspoon timely filed exceptions on July 16, 2020, including challenges to the Paynes' and Inces' authority to exercise eminent domain.  On August 14, 2020 she filed a demand for a jury trial to determine compensation.

63.  The Paynes and Inces filed motions to dismiss, reject, or deny Gwen Witherspoon's exceptions, her demands for a jury trial, and a hearing on their  right and power to exercise eminent domain.  No such trial or hearing has occurred.

64.  Contemporaneously with their motions, the Paynes and Inces both filed two applications in August 2020 asking the Court to declare the south section line on the Witherspoon parcel open from the east section line to the quarter corner for their access to the road easement they seek to take by eminent domain.  They apply to the Court to impose a road for them on the south section line.  They contend that treaties and state law entitle them to take such section-line access by declaratory judgment.

65.  The Paynes' and Inces' condemnation of a twenty-foot private road easement, two applications for a section-line road, and motions to avoid a hearing on Gwen Witherspoon's exceptions and challenges and a jury trial remain pending in the 2008 proceeding.

D.2.  ***South Section Line***

66.  On December 10, 2021, the Inces filed case No. CV-2021-00092 in Garvin County District Court against Gwen Witherspoon, J. I. Brown, LLC, and the Board (2021 proceeding).  The Inces seek a court order establishing the section line between the Witherspoon parcel in Section 9 and the parcel in Section 16 titled in J. I. Brown, LLC, as road/access for ingress and egress to their lands.

67.  In a motion in the 2021 proceeding, the Inces say that they do not ask that the section line be open for unconditional public use but describe no conditions.

68.  The Inces' Petition in the 2021 proceeding invokes treaties[2] and Oklahoma law, as do their applications with the Paynes in the 2008 proceeding.  They assert that treaties and precedents excuse the exercise of eminent domain, compensation, or proof of an exiting easement on the specific segment of the section line on which they seek to take access.  They assert that treaties and precedents excuse their compliance with petition requirements in Okla. Stat. tit. 69, § 646 or action by the Board before their right to take access on the south section line is declared.

69.  On April 7, 2022, the Inces filed a motion for summary judgment in the 2021 proceeding.  It relies on Section 1201 of Title 69 and cites, *inter alia*, the Five Tribes Allotment Act, the Cherokee Allotment Agreement, and *Childress v. Jordan*, 1980 OK CIV APP 35, 620 P.2d 470.  They contend that they have an absolute right to use of the section line between Section 9 and Section 16.  The Inces focus on parts of  Section 1201 that say that ". . . no fee owner shall be denied the right of ingress and egress to his land . . ." and "Nothing . . . shall deny a fee owner their right of ingress or egress to their land." In a partial journal entry of judgment, the Court declared the Inces' right only against Gwen Witherspoon to take free access on the south section line.

---

[2] The Paynes and Inces invoke several treaties in the state proceedings, including 34 Stat. 137, ch. 1876, "An Act To provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes," April 26, 1906 (H.R. 5976), Public L. No. 129 (Five Tribes Allotment Act), by which they contend that road easements exist along all section lines in Garvin County.  Other cases they cite also rely on other treaties.

16

70.  The Inces caused a copy of the partial journal entry of judgment to be filed on July 1, 2022 in the property records of the Garvin County Clerk.

71.  The Board objected to the Inces' request for access by court declaration in the 2021 proceeding.  The Board contends that state law vests it with exclusive jurisdiction over certain actions affecting highways in the county.  At a hearing on the Inces' summary judgment motion on May 6, 2022, Board counsel stated that an individual requesting that the section line be opened, come to a Commissioner's meeting, speak with the Commissioners, ask them if they would be willing to approve a resolution to open that section line.  See Okla. Stat. tit. 69, § 646.

72.  Access on the south section line of the Witherspoon parcel to which the Paynes and Inces claim a right will interfere with the Plaintiff's use of the field and pasture that lie between the Washita River and the highway for agricultural purposes to which it has been devoted for generations.  A section line road there will cause substantial environmental harm. Statement, Ex. 1, ¶¶ 10, 11, 17-18, 21-22.

73.  The 2008 and 2021 proceedings are ongoing.

## V.   CLAIMS

74.  Gwen Witherspoon incorporates by reference all allegations of the preceding paragraphs, including in particular the paragraphs enumerated in each count.

**Count One – Violations of the Public Use Clause of the Fifth Amendment**

A.    Claims against Howard Payne, Sue Payne, Christopher Ince, and Rachael Ince

A.1.  ***South Section Line***

75.  In the 2021 proceeding, Defendants Christopher Ince and Rachael Ince take a right of access on the south section line of the Witherspoon parcel.  Defendants Paynes' joint applications with the Inces pending in the 2008 proceeding seek to take access on the same section line for their use. See ¶¶64, 66-67, and 69-70, *supra*.

76.  Declaration  of the right of the Inces to take access on the south section line of the Witherspoon parcel constitutes a *per se* taking not for public use.

A. 2.  ***Road Easement***

77.  The Paynes' and Inces' continuing private condemnation of a twenty-foot road easement on the west side of the Witherspoon parcel in the 2008 proceeding pursuant to Okla. Stat. tit. 27, § 6 is a taking for a private purpose that violates the Fifth Amendment. See ¶¶ 11-13, 45, 52, 55, and 59, *supra*.

78.  The Oklahoma Landowner's Bill of Rights states that any attempt by the government or a private entity to take property through condemnation or other legal proceeding is subject to the condition that it be for public use.  It states further that the condition " . . . [']taken only for a public use['] . . .  means [property] can only be taken for a purpose or use that serves the general public."

79.  In *Jones v. Ransom*, 2008 OK CIV APP 44, ¶19, 184 P.3d 561, applying Section 6 of Title 27, the Court held that

> Other than the public policy which disfavors landlocked property, the taking of a "private way of necessity" is, by definition, for a private purpose.

> Consequently, the private purpose defense is not available in a private condemnation proceeding.
> (note omitted).

80.  By delegation to any private person of the sovereign power of eminent domain traditionally exercised by government, Section 6 of Title 27 makes private persons who assert it state actors.  The Paynes and Inces are liable under Section 1983 as state actors, and as persons acting in concert or joint participation with state officials, including a district court judge and clerk, for taking the Plaintiff's property by their exercise of eminent domain in the 2008 proceeding.

81.  The Paynes and Inces take a road easement on the west side of the Witherspoon parcel for their use by applying Section 6 of Title 27 in violation of the public use clause of the Fifth Amendment. Their acts to condemn under color of law continue to interfere with the Plaintiff's possession and enjoyment of her property. Statement, Ex. 1, ¶¶ 13-16, 19-20, 22.

82.  Pursuant to Section 53 of Title 66, applied by Section 6 of Title 27, the Paynes and Inces caused a commissioners' report on the Witherspoon parcel to be filed with the court clerk on June 18, 2020 and paid the reported value to the court clerk.  Their acts constitute a taking of the Plaintiff's property for their private use under color of state law in violation of the public use clause of the Fifth Amendment with *de facto* finality.

B.   Claims against the Garvin County Clerk and Board of County Commissioners

B.1. ***Road Easement***

19

83.  By procuring a commissioners' report and its filing with the court clerk, the Paynes and Inces caused a real, immediate, and continuing  risk of concrete injury to the Plaintiff's title in the Witherspoon parcel from a filing of the report by the County Clerk.

84.  Section 53 of Title 66 as applied violates the public use clause of the Fifth Amendment by authorizing the County Clerk to file the commissioners' report that divests a road easement from the Plaintiff's title, with the same effect as a deed for the private use of the Paynes and Inces.  See ¶¶ 14, 55-56, and 59, *supra*.

B.2.  *South Section Line*

85.  Filing by the Garvin County Clerk on July 1, 2022 of the partial journal entry of judgment of the Inces' right to section-line access caused a taking of property in violation of the public use clause. See ¶¶ 66-67, and 69-70, *supra*.

86.  The Defendant Board's statement in the hearing on May 6, 2022 describes a real, immediate, and continuing risk that it may declare, establish, or designate the south section line of the Witherspoon parcel open for access by the Paynes and Inces in violation of the public use clause.  See ¶¶ 69-71, *supra.*

**Count Two – Violation of the Just Compensation Clause of the Fifth Amendment**

A.   Claims against Howard Payne, Sue Payne, Christopher Ince, and Rachael Ince

A.1.  *South Section Line*

87.  Declaration of a right to take access constitutes a *per se* taking.  Declaration of the Inces' right to take free access of a section line on the Plaintiff's property and filing of

20

a declaration of it in the county property records on July 1, 2022 violate the just

compensation clause of the Fifth Amendment. See ¶¶ 64, 66, and 68-70, *supra*.

88.  No section-line easement, reservation, or right-of-way existed or is alleged to

have existed at inception of title in Samuel Neill's Section 9 parcel on September 19,

1903.  Since then, the property of the Neill Section 9 parcel has remained in private

ownership and is now the Witherspoon parcel.  No particular grant or taking of a right-of-

way on the section-line segment on the south side of the Witherspoon parcel after its

inception of title has been shown or alleged. See ¶¶ 30-36, and 39, *supra*.

89.  The Five Tribes Allotment Act is dated April 26, 1906, two and half years

after inception of private title in Samuel Neill occurred by his allotment selection (Neill

Allotment Records, Ex. 2), more than a month after his allotment certificate was recorded

(Neill Allotment Certificate, Ex. 3), and a year after his deed conveying the Neill Section

9 parcel to Robert Carmack was filed.  The State of Oklahoma did not accept the Five

Tribes Allotment Act until more than a year after the Neill Allotment Patent was filed

(Ex. 4) and after Robert Carmack conveyed to Maggie Carmack the property she would

later convey to Gwen Witherspoon's father, now the Witherspoon parcel.

90.  A government that by *ipse dixit* takes private property without compensation,

violates the Fifth Amendment. Retroactive application of law that divests title violates the

Contract Clause and, without compensation, the Fifth Amendment.  The Inces deprive

Gwen Witherspoon of her property by the July 1, 2022 interlocutory declaration that

either effects retroactive application of law (whether of Section 1201 of Title 69, or of the Five Tribes Allotment Act, or some other law) without compensation,[3] or gives the Inces free access based on simplistic brocards about fee owners' rights of unidentified origin.

91.   The Paynes' joint applications with the Inces for their own access along the same section line that are pending in the 2008 proceeding create a real, immediate, and continuing risk that by maxims or retroactive application of law by court or Board declaration will take access on the Plaintiff's property without compensation in violation of the Fifth Amendment.

B.   Claims against the Garvin County Clerk and Board of County Commissioners

B.1.   *South Section Line*

92.   Declaration of a right to take access constitutes a *per se* taking.  Filing by the Garvin County Clerk on July 1, 2022 of the partial journal entry of judgment of a right of the Inces of access on the south section line is a taking of Gwen Witherspoon's private property without compensation. See ¶¶ 30-36, 39, and 69-70, *supra*.

93.   The Defendant Board's statement in the hearing on May 6, 2022 describes a real, immediate, and continuing risk that it may declare the south section line of the

---

[3] If the Five Tribes Allotment Act as an Act of Congress is construed to authorize a road on the Witherspoon parcel, the Plaintiff asks the Court to certify to the Attorney General of the United States pursuant to 28 U.S.C. § 2403(a) that the constitutionality of 34 Stat. 137, ch. 1876, particularly Section 24, affecting the public interest as so applied to authorize a road on the Witherspoon parcel, is drawn in question by this Complaint. See footnote 2, *supra*.

Witherspoon parcel open for access in violation of the just compensation clause of the Fifth Amendment.  See ¶¶ 30-36, 39, and 69-71, *supra*.

**Count Three – Violations of the Due Process Clause of the Fourteenth Amendment**

A.     Claims against Howard Payne, Sue Payne, Christopher Ince, and Rachael Ince

      A.1.  ***Road Easement***

94.  No standard controls delegation of the right to exercise the power of eminent domain under Section 6 of Title 27 except that it may be asserted only by "[a]ny private person, firm or corporation."  In the absence of enactments by the legislature to fix modes, conditions, and agencies of the exercise of eminent domain by the Paynes and Inces, officials participate in confiscation of Gwen Witherspoon's property for them as they direct, in violation of due process.  See ¶¶ 55, 57-58, 60-62, and 63, *supra*.

95.  No statutory standard controls the meaning in Section 6 of Title 27 of "private ways of necessity." The Oklahoma legislature has not defined "private ways of necessity" or standards for taking them by eminent domain.

96.  The Oklahoma Supreme Court has construed the phrase "private ways of necessity" in Section 23 of Article 2 of the Oklahoma Constitution to mean common law easements of necessity.  *Board of County Commissioners of Muskogee County v. Lowery*, 2006 OK 31, ¶20, 136 P.3d 639.  Common law easements of necessity require proof of unity of title.  The Witherspoon and Payne/Ince parcels have no unity of title.

97.  Opinions by the Oklahoma Court of Civil Appeals have not expressly defined "private ways of necessity" in Okla. Stat. tit. 27, § 6 but have held that the phrase as used there does not mean common law easements of necessity.

98.  The Oklahoma Supreme Court has declared that what standards of necessity apply in a Okla. Stat. tit. 27, § 6 condemnation remains an open question in Oklahoma. *Smith v Bovaird Supply Co.*, 1980 OK 129, n.2, 616 P.2d 1157.  No fixed or explicit standard of necessity is established by statute or precedent.

99.  Their use of Section 6 of Title 27 and Title 66 to take the Plaintiff's property are standardless exercises of state power by the Paynes and Inces in their continuing condemnation in the 2008 proceeding that violate the Plaintiff's rights to due process.

100.  Oklahoma law requires no adjudication of a private condemnation, and bars challenge of its merits by the landowner, until the taking is imminent or has occurred. Section 53 of Title 66 provides for no predeprivation hearing and, as applied in the 2008 proceeding, affords inadequate process to the Plaintiff.

101.  Gwen Witherspoon is denied a hearing on the Paynes' and Inces' private taking of her property in the 2008 proceeding in violation of the due process clause by application of Section 53, dilatory motions by the Paynes and Inces, and the court clerk's defective notice.  See ¶¶ 55-61, and 63, *supra*.

A.2.  ***South Section Line***

24

102.  No specific right-of-way, easement, reservation, or authorization attached to the south section line on the Witherspoon parcel has been cited or exists.  The Paynes and Inces rely on language in Section 1201 of Title 69 and, alternatively, on references to treaties.  Since July 2020, maxims about treaties should no longer be considered dispositive of rights and obligations of persons or powers of sovereigns in Indian country. Neither can admonitions in Section 1201 be treated as if they created rights on all section lines and segments of section lines in the State of Oklahoma superior to the owners' title. Their ubiquitous application has improperly displaced facts in evidence on which adjudication of fundamental rights of property depends.  Law by axiom denies the Plaintiff rights to due process.  See ¶¶ 29-37, 39, 64, and 66-70, *supra*.

103.  Retroactive application of law in the 2021 proceeding to divest title from the Witherspoon parcel to the extent of a road easement violates due process.

B.     Claims against the Garvin County Clerk and Board of County Commissioners

B.1. ***Road Easement***

104.  Pursuant to application of Section 53 of Title 66 by Section 6 of Title 27, the Paynes and Inces procured the commissioners' report and its filing by the court clerk. They thereby created a real, immediate, and continuing  risk of concrete injury to the Plaintiff's title in the Witherspoon parcel through its filing by the County Clerk with the same effect as a deed, before the Plaintiff is afforded a meaningful hearing on their deprivation.  See ¶¶ 56 and 59, *supra*.

105.  As so applied, Section 53 of Title 66 violates due process.

B.2. *South Section Line*

106.  Ongoing acts of the Inces to involve the Board of County Commissioners in taking of access on the south section line of the Witherspoon parcel, or to exonerate the Board of its statutory duties in regard to county roads and property maintenance, cause a real and immediate risk of further deprivation of the Plaintiff's rights to due process.

107.  The Board's statement in the hearing on May 6, 2022 describes a real, immediate, and continuing risk that it may declare the section line on the south side of the Witherspoon parcel open for access through Section 646 of Title 69 in improper reliance on Section 1201, the Five Tribes Allotment Act, or other treaties or statutes.  A declaration or other act by the Board in derogation of the Plaintiff's rights to her property threatens to violate the Plaintiff's rights to due process. See ¶¶ 69-71, *supra*.

### Count Four –  Violation of the Equal Protection Clause of the Fourteenth Amendment

A.    Claims against Howard Payne, Sue Payne, Christopher Ince, and Rachael Ince

A.1. *Road Easement*

108.  As applied, Section 6 of Title 27 deprives the Plaintiff of fundamental rights to property in violation of the equal protection clause. See ¶¶ 49, 55 and 57, *supra*.

109.  Section 6 authorizes the Paynes and Inces to exercise the power of eminent domain.  No statute requires or permits  legislative or administrative review of their self-delegation or exercise of eminent domain.  Title 66 procedures were amended by the

Oklahoma Supreme Court to provide for an adjudicative court hearing, but they neither require one nor allow it in time to prevent a taking.  Failure by the state to define "private ways of necessity" and set standards for delegation and exercise of eminent domain results in a violation of equal protection: the Paynes and Inces, four private persons, appoint to themselves the sovereign power of eminent domain and take private property from Gwen Witherspoon, a private person, while state law denies her a meaningful opportunity to challenge their taking.  As so applied, Section 6 of Title 27 and Section 53 of Title 66 subordinate the Plaintiff's rights in private property to the power of the Paynes and Inces, as private persons, to take it for their use, in violation of Gwen Witherspoon's right to equal protection of the laws.

A.2.  ***South Section Line***

110.  As applied, Section 1201 of Title 69 grants the Paynes and Inces as fee owners an absolute right to access on the south section line of the Witherspoon parcel without their showing proof of a right-of-way that exists for their private benefit, relying instead on assumptions about treaties and state law.  As so applied, Okla. Stat. tit. 69, § 1201, subordinates the Plaintiff's rights in her private property to theirs, in violation of her right to equal protection.  See ¶ 102, *supra*.

B.  Claims against the Garvin County Clerk and Board of County Commissioners

***South Section Line***

27

111.  The Board's statement in the hearing on May 6, 2022 describes a real, immediate, and continuing risk that it may declare the section line on the south side of the Witherspoon parcel open for access by the Paynes and Inces through Section 646 of Title 69.  Such a declaration or other act by the Board threatens to violate the Plaintiff's rights to equal protection by subordinating her rights to her property in favor of an alleged but unproved absolute entitlement of the Paynes and Inces to use it. See ¶ 102, *supra*.

## Count Five – Nominal Damages

112.  The Plaintiff is entitled to nominal damages as a partial remedy for violations of her legal rights.

## Count Five – Claim for Costs, Expenses, and Reasonable Attorney Fees

113.  Pursuant to 42 U.S.C. § 1988, the Plaintiff claims her costs, expenses, and reasonable attorney fees against each Defendant.

## PRAYER FOR RELIEF

114.  The Plaintiff respectfully asks for a speedy hearing under Rule 57 for a declaration that 34 Stat. 137, the Five Tribes Allotment Act, does not authorize or reserve a road, easement, or right-of-way on the Witherspoon parcel, and for a preliminary injunction addressed to the Board, Howard Payne, Sue Payne, Christopher Ince, and Rachael Ince against establishing, locating, opening, declaring, or building a road along the section line on the south side of the Witherspoon parcel or using it for access.

115.  A federal question controversy exists as to whether the Five Tribes Allotment Act authorizes any of the Defendants to take access on the south section line of the Witherspoon parcel through the Plaintiff's farmland without further legislative action by the state or county, without exercise of eminent domain, and without compensation.

116.  A controversy also exists as to whether the Five Tribes Allotment Act divests title in the Neill Section 9 parcel to the extent of imposing on it section-line easements which may be exercised, by Christopher Ince, Rachael Ince, Howard Payne, or Sue Payne as private applicants, or by the Board, for opening the south section line by declaration as a road not for unconditional public use and not maintained as a public road by the Board.

117.  A declaration from this Court construing Section 24 of the Five Tribes Allotment Act as a matter of federal law would settle these issues.[4] It would also serve to clarify the legal issues in dispute among the parties regarding their rights, obligations, duties, and powers under federal law.

118.  To remedy  ongoing violations of federal law and deprivation of her constitutional rights, the Plaintiff also seeks judgment declaring:

---

[4] A declaration that also construes other treaties on which the Paynes and Inces or cases they cite rely would settle their application, if any, to the issue of treaty reservations of road authorizations as they affect section lines on the Witherspoon parcel:  Section 23 of 26 Stat. 81 [43 U.S.C. § 1095], ch. 182, "An act to provide a temporary government for the Territory of Oklahoma," May 2, 1890; Section 10 of 32 Stat. 500, ch. 1323, "An Act to ratify and confirm a supplemental agreement with the Creek tribe of Indians," June 30, 1902, Public No. 200; Section 37 of 32 Stat. 716, ch. 1375, "An Act to provide for the allotment of the lands of the Cherokee Nation," July 1, 1902, Public No. 241; and Section 10 of 34 Stat. 539, ch. 3572, "An Act for the division of the lands and funds of the Osage Indians in Oklahoma Territory," June 28, 1906, Public No. 321.

(a) that Okla. Stat. tit. 27, § 6 as applied by the Paynes and Inces to take a road easement violates the Fifth and Fourteenth Amendments for causing a taking for private use without adequate standards of delegation, definition, and necessity;

(b) that Okla. Stat. tit. 66, § 53 as applied by the Paynes and Inces as private persons to take a road easement across the Plaintiff's property violates the Fourteenth Amendment for failure to entitle her to a predeprivation hearing, failure to provide adequate process, and for depriving her of equal protection of the laws;

(c) that declaration of a right to take access on the south section lin constitutes a *per se* taking under the Fifth and Fourteenth Amendments;

(d) that Okla. Stat. tit. 69, § 1201 as applied to declare a right to take free access on the Witherspoon parcel without exercise of eminent domain or evidence of a specific pre-existing easement violates the compensation clause of the Fifth Amendment; and

(e) that the Defendant County Clerk's filing of an interlocutory declaration that the Inces' take free access on the south section line of the Witherspoon parcel deprives the Plaintiff of her property in violation of the Fifth and Fourteenth Amendments.

119.  The Plaintiff seeks prospective injunctive relief by:

(a) a preliminary and permanent injunction against the County Clerk from filing or recording the commissioners' report dated June 17, 2020;

(b) a preliminary and permanent injunction against Howard Payne, Sue Payne, Christopher Ince, and Rachael Ince from seeking confirmation of the commissioners'

report dated June 17, 2020 or other commissioners' reports, if any, which may be made under Section 53 of Title 66 pursuant to Section 6 of Title 27; and

(c) a preliminary and permanent injunction against the Board from opening, establishing, declaring, constructing, or locating a road on the Witherspoon parcel without exercise of eminent domain for public use and payment of just compensation.

120.  The Plaintiff is entitled to nominal damages for deprivations of rights.

121.  Plaintiff Gwen Witherspoon asks the Court to award her her costs, expenses, and reasonable attorney fees under 42 U.S.C. 1988 and applicable state law against each Defendant as appropriate.

122.  Plaintiff Gwen Witherspoon prays that this Court grant her such other and further relief in law and equity as this Court deems just and proper.

Respectfully submitted,

Dated: July 22, 2022                    By: s/ Vincent J. Liesenfeld

_____
Vincent J. Liesenfeld,  OBA No. 17086
Attorney for Plaintiff Gwen B. Witherspoon
Vincent J. Liesenfeld PC
101 East Gray Street, Suite C
Norman, OK 73069
Telephone: 405-726-1124
E-mail: vliesenfeldwdok@outlook.com